## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| LEQUITA S. WATSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  4:18 CV 1163 RWS |
| | ) | |
| WELLS FARGO BANK, N.A., d/b/a | ) | |
| WELLS FARGO DEALER | ) | |
| SERVICES, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER OF REMAND

Plaintiff Lequita Watson moves to remand on the basis that the amount in
controversy does not exceed $75,000. Because Defendant Wells Fargo Bank, N.A.
(Wells Fargo) does not prove by a preponderance of the evidence that "a fact
finder might legally conclude" that the amount in controversy has been met, Kopp
v. Kopp, 280 F.3d 883, 885 (8th Cir. 2002), I will grant Watson's motion to
remand.

## BACKGROUND

Watson filed this suit alleging violations of the Missouri Merchandising
Practices Act (MMPA) and Missouri's right to cure statute, § 408.555 RSMo, by
Wells Fargo. Watson argues that Wells Fargo repossessed her 2014 Chevrolet
Impala three days before the deadline stated in a notice of right to cure letter, dated

January 30, 2018. The right to cure letter allegedly stated that plaintiff had until February 20, 2018, to pay $1,540.20 to cure a default on her car loan and retain possession of the Impala. Wells Fargo allegedly repossessed the Impala on February 16, 2018. Watson says she paid the required $1,540.20 on February 17, 2018 and regained possession of the Impala, apparently on the same day. Watson allegedly purchased the Impala in or around May 2017 for about $20,000.

Watson argues that Wells Fargo used deception, fraud, false pretense, false promise, misrepresentation, or unfair practice, or concealed suppressed, or omitted a material fact in connection with the sale and repossession of the Impala. § 407.020 RSMo. Within the 30-days allowed, 28 U.S.C. § 1446(b), Wells Fargo removed this case on the basis of diversity jurisdiction. It is undisputed that the parties are of diverse citizenship, but the parties disagree as to whether the amount in controversy has been met. Wells Fargo argues that Watson's request for actual damages, punitive damages, and attorneys' fees under the MMPA and § 408.550 RSMo, result in an amount in controversy greater than $75,000.

## LEGAL STANDARD

I only have diversity jurisdiction if "a fact finder might legally conclude" that the amount in controversy is greater than $75,000. Kopp v. Kopp, 280 F.3d at 885. "Statutes conferring diversity jurisdiction upon the federal courts are to be strictly construed." Janzen v. Goos, 302 F.2d 421, 424 (8th Cir. 1962). The

removing party bears the burden to establish the amount in controversy by a preponderance of the evidence. <u>Kopp</u>, 280 F.3d at 884. When evaluating the amount in controversy I may consider punitive damages and statutory attorneys' fees. <u>Crawford v. F. Hoffman-La Roche Ltd.</u>, 267 F.3d 760, 766 (8th Cir. 2001). I will "scrutinize a claim for punitive damages," however, "more closely than a claim for actual damages to ensure that Congress's limits on diversity jurisdiction are properly observed." <u>State of Mo. ex rel. Pemiscot Cty., Mo. v. W. Sur. Co.</u>, 51 F.3d 170, 173 (8th Cir. 1995). Specifically, the "existence of the required amount must be supported by competent proof." <u>OnePoint Solutions, LLC v. Borchert</u>, 486 F.3d 342, 348 (8th Cir.2007). "[W]hen it appears to a 'legal certainty' that the plaintiff cannot satisfy the jurisdictional amount," I must dismiss for lack of jurisdiction. <u>Allison v. Sec. Ben. Life Ins. Co.</u>, 980 F.2d 1213, 1215 (8th Cir. 1992) (quoting <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 289 (1938)).

## **ANALYSIS**

After carefully considering Watson's claims, I find that Wells Fargo has not established by a preponderance of the evidence that a fact finder might legally conclude the amount in controversy is greater than $75,000. In her complaint, Watson alleges that she suffered the loss of her vehicle for about a day as well as "garden variety emotional distress in the form of extreme and severe embarrassment, anxiety, inconvenience, loss of sleep and appetite, humiliation and

stress." (ECF No. 1-1 at 2-3). There is no allegation from either party that Watson

incurred any medical expenses, lost her job, or suffered any other severe economic

injury from the repossession of the vehicle.

With these facts in mind, Wells Fargo does not argue that Watson's actual

damages may total $75,000. Instead, Wells Fargo depends on attorneys' fees and

punitive damages to reach the amount in controversy. As noted <u>supra</u>, I may

consider punitive damages and statutory attorneys' fees when evaluating the

amount in controversy. <u>Crawford v. F. Hoffman-La Roche Ltd.</u>, 267 F.3d 760. I

will, however, scrutinize these claims more closely for "competent proof" of the

required amount. <u>OnePoint Solutions, LLC v. Borchert</u>, 486 F.3d 342, 348.

In support of its argument, Wells Fargo, identifies six MMPA automobile

cases where actual damages ranged between $2,144.87 and $25,000, but juries

awarded punitive damages of $100,000 or more. Three of these cases involve the

same scheme where plaintiffs were fraudulently induced to purchase vehicles

through a misrepresented financing arrangement. <u>See</u> <u>Lewellen v. Franklin</u>, 441

S.W.3d 136, 139, 145-48 (Mo. 2014); <u>Estate of Overbey v. Chad Frankllin Nat'l</u>

<u>Auto Sales N., LLC</u>, 361 S.W.3d 364, 369-71, 373-74 (Mo. 2012); <u>Heckadon v.</u>

<u>CFS Enters., Inc.</u>, 400 S.W.3d 372 (Mo. Ct. App. 2013), 375-77, 382-86. The other

three cases also involve fraud, or alleged fraud, in the sale of a vehicle. <u>See</u> <u>Peel v.</u>

<u>Credit Acceptance Corp.</u>, 408 S.W.3d 191 (Mo. Ct. App. 2013) ("The sale of a car

fails and is necessarily considered fraudulent and void when the seller fails to deliver a certificate of title as required by section 301.210."); <u>Grabinski v. Blue Springs Ford Sales, Inc.</u>, 136 F.3d 565, (8th Cir. 2000) ("After Ms. Grabinski refused to sign the affidavit, Mr. Graham, contrary to the law, told her that Missouri law required buyers of all vehicles to sign such an affidavit because until the vehicle was inspected it was considered unsafe."); Mishra v. Coleman Motors, LLC, No. 4:16CV01553 PLC, 2017 WL 994868, at *5 (E.D. Mo. Mar. 15, 2017) (noting plaintiff's allegation that defendant sold a car whose value was $13,500, but which required repairs in excess of $13,000).

These cases are easily distinguishable from Watson's claims. In all of the cited cases, the plaintiff paid thousands of dollars for a vehicle that was effectively worthless, unaccompanied by title, or unaffordable and unredeemable under a fraudulent financing scheme. In the case before me, Watson was able to redeem her vehicle within a day. There is no allegation that the vehicle is defective, worthless, or unaffordable because of a fraudulent financing scheme. Without the support of these cases, and in light of the short time during which Watson was deprived of her vehicle, Wells Fargo fails to identify "competent proof" to show that Watson's damages could meet the amount in controversy.

Accordingly,

**IT IS HEREBY ORDERED** that this case is remanded to the Circuit

Court of St. Louis County, Missouri, pursuant to 28 U.S.C. § 1447(d).


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 7th day of August, 2018.